**UNDER SEAL**



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:12-CR-217 |
| | ) | |
| | ) | Count 1 - 21 U.S.C. §§ 959(a), 960, 963; |
| MAURICIO SANTOYO | ) | 18 U.S.C. § 2 (Conspiracy to |
| VELASCO, | ) | Distribute Five Kilograms or |
| | ) | More of Cocaine Knowing and |
| Defendant. | ) | Intending that it will be |
| | ) | Unlawfully Imported into the |
| | ) | United States; Aiding and |
| | ) | Abetting) |
| | ) | |
| | ) | Forfeiture - 21 USC § 853 |
| | ) | (Criminal Forfeiture) |

## INDICTMENT

MAY 2012 TERM - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

### Background

At all times relevant to this Indictment:

1. The defendant, MAURICIO SANTOYO VELASCO, is a retired general with the Colombian National Police (CNP). During his tenure with CNP, from approximately 1996 through approximately 1999, the defendant served as the commander in Medellín, Colombia, of the Gaula, CNP's anti-kidnapping and anti-terrorism unit. From approximately 2000 through approximately 2002, the defendant served as commander of the Cuerpo Elite Anti-Terrorista, an elite, anti-terrorism task force. From approximately 2002 through approximately 2006, the defendant served as the head of former Colombian president Álvaro Uribe Vélez's security

detail. Additionally, from approximately 2008 through approximately 2009, the defendant served as CNP's police liason in Italy.

2.  The Autodefensas Unidas de Colombia, or United Self-Defense Forces of Colombia ("AUC"), is a terrorist and drug-trafficking organization, formed in approximately 1997. At the height of its operations, in approximately 2000, the AUC was responsible for hundreds of assissinations and kidnappings, primarily funded with the proceeds of cocaine trafficking. The AUC controlled the production, transportation, and sale of multiple of tons of cocaine to the United States and other countries worldwide. The United States Department of State has designated the AUC as a foreign terrorist organization.

3.  The Oficina de Envigado is a criminal organization that collects debts using kidnapping, extortion, and murder, on behalf of Colombian drug trafficking organizations, including the AUC. The Oficina de Envigado began in an area of Colombia proximate to Medellín in the 1980's as a small faction of assassins, supported by drug trafficker Pablo Escobar. After Escobar's death in 1993, the Oficina de Envigado remained involved in narcotics trafficking, kidnapping, and assassination in connection with drug trafficking groups, including the AUC.

## COUNT 1

(Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending that it would be Unlawfully Imported into the United States)

THE GRAND JURY FURTHER CHARGES THAT:

From in or about 2000 and continuing thereafter up to in and about November 2008, the exact dates being unknown to the Grand Jury, in Colombia, the defendant, MAURICIO SANTOYO VELASCO and others, known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to commit the following offense against the United States: to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and the defendant did knowingly and intentionally aid and abet such offense.

The allegations in paragraphs 1 through 3 of this Indictment are incorporated herein by reference.

### Manners and Means of the Conspiracy

The defendant and his co-conspirators used the following manners and means, among others, in furtherance of the conspiracy:

4.  It was part of the conspiracy that the defendant's conspirators, known and unknown to the Grand Jury, were the leaders of the AUC and Oficina de Envigado. These organizations trafficked muliple of tons of cocaine produced in Colombia to the United States, often through Central America and Mexico.

5. It was further part of the conspiracy that these high-level AUC and Oficina de Envigado members would pay substantial bribes to the defendant in exchange for the defendant's assistance in their drug-trafficking operations.

6. It was further part of the conspiracy that in exchange for these bribes, the defendant informed these drug-traffickers of ongoing investigations by Colombian, British, and United States law enforcment.

7. It was further part of the conspiracy that in exchange for these bribes, the defendant provided information concerning ongoing wiretaps conducted by law enforcement to the drug-traffickers, who were the targets of these wiretaps.

8. It was further part of the conspiracy that in exchange for these bribes, the defendant promised to facilitate the transfer of corrupt police officers, who would further assist these drug-traffickers in their business.

9. It was further part of the conspiracy that in exchange for these bribes, the defendant would notify drug traffickers of upcoming arrest operations, including in investigations conducted by the Colombian authorities in cooperation with the United States Drug Enforcement Administration.

10. It was further part of the conspiracy that in exchange for these bribes, the defendant would conduct unauthorized wiretaps to collect information to assist these drug-traffickers.

11. It was further part of the conspiracy that in exchange for these bribes, the defendant would provide intelligence information collected by Colombian law enforcement to drug traffickers, including information on individuals who were later targeted to be murdered by

these drug-traffickers.

(All in violation of Title 21, United States Code, Sections 960, 963; Title 18, United States Code, Section 2).

## FORFEITURE NOTICE

The defendant, if convicted of the violation alleged in Count 1 of this Indictment, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853(a), any property constituting, or derived from, any proceeds each defendant obtained, directly or indirectly, as the result of such violation; and any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. This property includes, but is not limited to $5,000,000 in United States currency, representing proceeds that the defendant obtained in the course of the conspiracy alleged in Count 1 of this Indictment. (Pursuant to Title 21, United States Code, Section 853).

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
Foreperson

Neil H. MacBride
United States Attorney

By: _____
Michael P. Ben'Ary
Assistant United States Attorney